Dr. 2-870-403 Integrated Marriage of Kristin B. Hardy, holding the witness, Kristin, to the jury, Petitioner, Appellant, and Keith, our jury, respondent, at the lead. Arguing on behalf of the Petitioner, Appellant, and Mr. Hardy, here's what I got. Arguing on behalf of the respondent at the lead, Mr. Paul L. Feinstein. Thank you. Good morning, counsel. Ms. Musilac? I don't know if I pronounced your name correctly. You did. Thank you. Good morning, and may it please the Court. My name is Wendy Musilac, and along with my partner, Andrew Kores, we represent the Appellant, Kristin Hardy. Our contention is that the trial court abused its discretion in reducing Ms. Hardy's maintenance award to $5,000 per month, and that the trial court failed to balance Ms. Hardy's ability to become self-sufficient against the likelihood that she would be able to support herself in some reasonable approximation of the standard of living established during the marriage, as evidenced by the party's stipulations, exhibits, and testimony, as recorded by this Court's order of June 13, 2017. And the trial court failed to adequately consider all of the factors of the Illinois Marriage and Dissolution of Marriage Act as set forth in the court orders of June 20th of 2016 and June 13th of 2017. Now, in the Court's March 21st, 2018 order, didn't he say, specifically, I'm reading from paragraph 4, Kristin has been able to live the approximate lifestyle to which she had become accustomed while still saving money? And he incorporated in this March 21st order any of his prior findings that weren't inconsistent with that, and there were some findings with regard to lifestyle as well. So how did he not take lifestyle into account if we are reading in black and white about lifestyle? He certainly made the statement that he considered the lifestyle that the parties enjoyed during the marriage. However, the lifestyle that the parties enjoyed during the marriage was the $15,000 per month of expenses. The trial court reduced those expenses, didn't consider the fact that Ms. Hardy had reduced her home, that she'd been making sacrifices. None of that is mentioned in his ruling. None of that is addressed by the court. The fact that Ms. Hardy had given up her, the lifestyle that the parties enjoyed in order to cover the daughter's expenses, such as softball and basketball and things without contribution from Mr. Jury. Her home was much smaller. Well, but she was single, living alone. I mean, are you saying that she should have had an amount so she could have had a five-bedroom home or the equivalent size home as he? Is that what you're arguing? Not necessarily. It didn't necessarily have to be a five-bedroom home. Mr. Jury did certainly continue to live the lifestyle that the parties enjoyed during the marriage, but she wasn't able to save money. When you go back to that $300,000 allegation, there were comments by the court that he wasn't sure that she had depleted it. In fact, it was based on the impeachment of Mr. Jury's testimony and that he didn't find the summary compelling or persuasive. There was no evidence that she actually had saved the money. But she did travel. I mean, she took trips to Australia. Her travel, actually, she budgeted additional monies for travel over the years. Some other of her expenses she increased as well. So she was able to do the type of traveling that they had done before, was she not? So it was slightly different in the way she did it. She actually was staying more with friends and family. She had family in Australia, and she testified that she stayed with them. She used frequent flyer miles. They did go on regular vacations during the marriage, and she took more driving trips now since the divorce than she had before. Now, when Judge Brew set the maintenance in the amount of $9,700 a month, she hadn't begun her nursing career. She still was paying some of her daughter's expenses. Isn't that right? Correct. Okay. So she then did get a job. She certainly was able to get her nursing degree and got a job and was able to bring in income. So the court had to take that into account. Isn't that correct? Correct. The court did need to take in her new income into account. Okay. And the reduced expenses from the daughter being taken care of by the husband. Certainly those expenses that the husband would be picking up would also be something that would be considered. Okay. Also in the March 21, 2018 order, the court said, and I'm going to read some of this, the court must take into account Kristen's income and her reduction of expenses, which we've just been talking about, and for these reasons her maintenance award must be reduced to fairly reflect these changes. It would not be fair to reduce her award to amount calculated to merely cover her expenses. Yet the court should not consider an amount that allows her to save $50,000 annually either. The next sentence is the one I'm going to focus on. Where Kristen awarded $5,000 per month in maintenance, she would enjoy a net gain of at least $20,000 over her actual expenses, a reasonable amount. Does the $5,000 per month in maintenance allow that to happen? It does not. And why not? So the trial court, by this 2018 ruling, had increased what he originally stated her income at $55,000 to $60,000, but assuming for the sake of the argument that Kristen's income was $60,000 and she was receiving $60,000 in maintenance, that's $120,000. Would you speak a little more slowly, please? That's $120,000 of gross income. That doesn't account for any taxes. Assuming that the trial court's expenses that the court attributed to Ms. Hardy are basically $100,000, we're left with $20,000 of gross income. After taxes of about $33,000 a year, she's actually operating at a deficit, even with her income and the maintenance of $60,000. Now the taxes that you were talking about of $33,000 were the taxes that were reflected on her financial affidavit. They were estimated based on her financial affidavit. Right, but the income there was much more. It was $150,000-something, was it not? So those aren't the taxes. Correct. Assuming even a 25% tax rate plus adding in the state tax rate, there's the local tax rate in Ohio in addition, and taking into account Social Security and Medicare that she would pay on her income, even if it still would be somewhere between $20,000 that she had to pay in taxes at least, and that leaves us with $100,000 exactly, assuming, and nothing to save. Well, we don't really know what the amount of taxes is based upon this amount that the judge was talking about. Correct. We didn't have the amount that the judge was talking about. There's nothing in the record we can point to and say this is what the award should be. You could look at the tax rates that were listed on her financial affidavit. I guess we can do the math to some extent. The Ohio tax rate is the same, applying that to the new income. We can look at the local tax rate and then estimate based on the federal Social Security and Medicare are the same on income, regardless of if she doesn't meet the maximum, it would be on her full income of $60,000. I guess my question is, is that our job? No, Your Honor. Okay. Good. I mean, getting back to the lifestyle issue, the judge did make a finding that these people, when they were married, did not lead an extravagant lifestyle. Not extravagant, but comfortable. And, you know, I guess it's all relevant to your interpretation of the word. They had lived on incomes of at least $427,000 per year leading up to the divorce. And that was really the basis that they were living off of. And it was $15,000 a month in expenses that Ms. Hardy experienced at that time, at the time of the trial. And it was when Judge Brew did the ruling back then, he said it was the $9,700 a month in maintenance plus the $4,100 a month in child support combined that would allow Ms. Hardy to enjoy the lifestyle. Would you agree that there is, separate apart from the tax issue, that there was some evidence in the record to support the $60,000 imputed income? I think it was overestimated because at the time of the March 20th, 2015th ruling, the trial court at that time had estimated $55,000. So it did increase from the trial to the next ruling. But the exhibit that was put in there, it's exhibit number nine, if you extrapolate that out over a year, it's like $69,000, almost $69,000. So there was an education class on there that is not repeated. Her salary is paid, or she works 36 hours per week. And because she's working the night shift, she gets an hour differential. So from her employment without any overtime or education classes, and she had more education classes because she was new to nursing at the time. But that is more along the lines of $50,000 a year. In the trial court's oral ruling in March of 2015, the trial court commented that Ms. Hardy, quote, was awarded 60% of the marital estate along with significant maintenance payment in excess of $116,000 annually. That is a lot of money for a single mother to earn, end quote. The trial court made no mention of the stipulation of Mr. Jury's income. Rather, the only reference that the trial court made to Mr. Jury's income was the erroneous $250,000 per year. However, Mr. Jury's income, as stipulated between 2006 and 2008, was in excess of $427,000 per year. Furthermore, as of February 19, 2015 – Your argument seems to be tending toward equalizing income, and that's not what we do with maintenance. I mean, you would agree with that. I would agree, and I'm not asking to equalize income. Okay, I mean, because the former husband's ability to pay is a factor to be considered. But, you know, the fact that maybe he wins the lotto or whatever, it doesn't mean that her lifestyle at the time of the marriage was any different than it was. Correct. And we're not asking to equalize the income. The reason why I think his income is relevant is that that $427,000 was the lifestyle that they did enjoy during the marriage. The fact that he earned $700,000 is only relevant to the ability to pay the maintenance. And it's also, when you look at his financial affidavit, he underestimates his income on his financial affidavit. He has a total income that he's reflected on there as $489,600. But as of February 19th of 2015, without having received over 10 months of his $313,000 base salary, he was already at $454,440.09. And he, after paying maintenance based on the reduced income he was listing, he had the ability to have over $3,000 of after-tax money left. So the reason we're pointing it out is that it's relevant to his continued ability to pay while he maintains the lifestyle that the parties enjoyed during the marriage. He lists expenses which weren't accounting for the daughter's expenses he would now be taking on, but of $12,283, a significantly higher mortgage, $28,000 on a baggage trip. He's continued to enjoy the lifestyle while Ms. Hardy had not. And that's where I believe it's relevant. But how was Judge Bush's finding that she maintained a commensurate lifestyle after the divorce against the manifest weight of the evidence? I think when you look at the totality of the circumstances, that there was never a finding by the trial court as to his income being substantially more. So when he awarded the $4,700 a month, he had stated that Mr. Jury's income was $250,000 per year. When he upped it by the $300 and also purported that she was saving money, he wasn't looking at the additional income that actually existed. And he pointed out a number of times that I have to focus on her reduced expenses and the lifestyle. And the fact that she was earning income, right? Correct. But he's basing it on a reduced lifestyle, not the lifestyle that they enjoyed during the marriage. A reduced lifestyle? I'm sorry, in what sense? Reduced from what the parties enjoyed during the marriage. She cut back on expenses in a lot of ways, particularly in her housing. She did start using frequent flyer miles and other things to cut down on some vacation costs and other things to make it more affordable for her and her daughter in order to ensure her daughter was able to do the activities that she wanted to do, that she had done throughout the marriage. But now he is, Keith is, assuming those expenses for the daughter. So she doesn't have those additional expenses, correct? Correct. So now with the money she could shift and actually go back to the lifestyle she previously was enjoying during the marriage. She had to make those sacrifices, had to cut back after the divorce in order to make things work. But that's not an ongoing thing, right? That is not an ongoing thing, but now she, without the money she can't. I mean there was a time period where that was the case, but now going forward that's not the case, correct? Correct. And the whole thing is that reduced expenses that she's needing, that are listed in her financial epidemic, are based on that lifestyle that was changed. She could get a different home, she could do some other things, things that she was cutting out. So while those $2,000 plus expenses are being cut out from the daughter's column, that should be money that she should be able to use to continue to enjoy the lifestyle that the parties enjoyed during the marriage. You would agree that the $83.31 per month for expenses was not against the manifesto of the evidence, after you take out the... I would agree that that is what her financial affidavit provides. You will have additional time on that. Thank you again. Thank you very much. Mr. Feinstein. Thank you. May it please the Court. Good morning again, Justices. Good morning, Counsel. My name is Paul Feinstein. I represent the Appellee Chief Jury. This case is governed by an extremely deferential standard of review, as is indicated in a number of the questions I already heard from the Court. All that's required to affirm is that one reasonable person would agree with the ultimate amount set by the trial judge. And as you indicated, Justice, it's not your job to reweigh the evidence that we have. And there is sufficient evidence to support this ruling. This Court sent the case back to the trial judge to compute the reasonable amount of permanent maintenance and to balance Christian's self-sufficiency with a reasonable approximation of the marital standard of living. The trial court did that. What Counsel didn't talk about is certain of the credibility findings that the trial court made. And again, there's a very deferential standard of review with respect to that. And none of the trial court's credibility findings are unreasonable. There are certain key facts that are clear and established by the record. Christian's reasonable needs have substantially increased. At the same time, her income and earning capacity have considerably increased, as she admitted and as her own expert that she brought in admitted. She was earning zero the time of the divorce. And then she was earning, there was evidence in terms of 50,000, 55,000. Trial Counsel, Mr. Peskin, computed 63,000 based on that Exhibit 9 that your Honor referenced. And my computation in the brief was actually close to 69,000. So whatever it is, and let's also keep in mind, we don't just look at her income at the time. Under all the case law and the statute, we look at income potential. And here is a woman who has gone from nothing to she's built herself up relatively quickly. Her own expert testified she could earn another 20,000 on earning her bachelor's degree. And she was also considering a master's degree. And that, under his report, would bump up her income to six figures, I think 114,000 just in Ohio. Well, but the record does reflect she had a learning disability, and this would take quite some time if she were able to accomplish it at all. So it looks like, certainly the record reflects that there is now a great disparity of income between the parties. And that Mr. Jury does have the ability to pay maintenance. How does the court balance, and did this court balance the ability of him to pay against her ability to be somewhat self-sufficient? How does he balance that against the lifestyle of the parties against the marriage? I'm sorry, during the marriage. Yes, what he did is, and it has to be, as you indicated, before taking into context not only his order of 2018, but the previous order of 2016, which went through all the factors and did list all those things, save for the balancing, which this court directed him to do the second time. It indicated that he had substantial income, and, in fact, that his income was up. I believe the term used was his income had doubled. There was a finding somewhere as well that that does not allow her the windfall of a standard of living in excess of what they had during the marriage. You look at what in the benchmark is, and this is guided by previous rulings in the trial court, previous rulings of this court going back to 2009 as to that $9,700 a month, that that represented the standard of living during the marriage. What we now have is, and that was with her with no income, now we have her with the greater income, the greater income capacity, notwithstanding that his has gone up as well, and the reduced expenses. So counsel says that they still want $116,000 a month in maintenance. I just can't put my head around it. Well, how do you respond? I mean, she indicated that Kristen had no choice because she was in a position of covering the expenses for Morgan, their daughter, and so she had to significantly reduce her lifestyle, take a smaller apartment, travel in a different manner than they had been used to during the marriage. I wanted to address the travel specifically, Justice, as well. When you compare her affidavits, it's very curious. Her vacations, travels, actually went up before. They were $6,750 a year, and they went up to $8,400 a year. So she found a way, notwithstanding how she says she traveled, she still spent the money, she still went to the Caribbean, she still went to Australia, and the trial court noted that and made findings in terms of that and, I believe, found that to be lavish. So she was still able to do that. She's in a smaller home, as was pointed out in the original questioning, which is just for her now, and again, we don't equalize incomes, we don't equalize households. That's not what the trial court's job was, and that's not what this court's job is on review. If I've answered the question. Okay. Asking and focusing on the court's March 21, 2018 order, as I did with opposing counsel, when we look at the sentence, were Kristen awarded $5,000 per month in maintenance, she would enjoy a net gain of at least $20,000 over her actual expenses, a reasonable amount. Is that, what did the trial court intend to do, and how does that sentence reflect what he intended to do, and does the $5,000 accomplish that? Well, first, whether he intended to do it or not is not the actual guidepost. She's not entitled necessarily to a certain amount to put away, but keep in mind, the expenses that we're talking about, the $8,300 a month, and as I looked again at the two affidavits, her amount without the children's is actually a little less. It's about $8,000 a month, so $96,000 a year, but the trial court ruled that it was padded. He used the term, she padded her expense affidavit, and some expenses seemed extremely inflated. There was a missing, there was an item of $631 a month that said other, and he said, well, she never told me what that was. He found that she overstated her housing expenses, because the principal interest taxes and insurance per the exhibit she gave was $800 a month, but she claimed another, I think, $1,150 a month. Well, are you disagreeing with the figure that he used, the $99,000 per year? The $8,330? Yeah, $8,331 per month. I'm saying, I'm just saying that that's not. That's what he found, based on the evidence. As to what she listed, but he found that it was excessive, and as I said, I did my own math. He found, is there a finding someplace that in this March 21st order or something oral he said that it was excessive? Is that what the record reflects? Yes, he said that some expenses seemed extremely inflated. Those are his words, and he was talking about clothing, he was talking about the travel, he was talking about the car expenses, the transportation expenses from 2008 to 2015 went up from about $582 a month to almost $1,300 a month. So there were a lot of those sorts of personal expenses went up $1,000 a month. So there were a lot of these expenses that he didn't believe. In the seven years between the two? In the seven years. There were seven years between the two affidavits? Yes. Yes, Justice. Exactly. All right. And also, as I pointed out in the brief, her testimony regarding the lifestyle was very evasive, but even she admitted that the mayoralist's lifestyle could not be described as extravagant. And I think, Justice Zinoff, you even used the same words, comfortable but not extravagant, in your first ruling back in 2009 when you affirmed the ruling. So my question is, does the $5,000 per month give her a net gain of $20,000 over her actual expenses? It does, at least, when you take into account the excessive. First of all, she doesn't have the expenses that she had before. The expenses she had, he found, were excessive. And she has the money, plus the increased earning capacity, as testified by her own expert. Well, he says he took that into account. But in Paragraph 5 in his order, he made a finding that her expenses, he said, are only $83,39.13 per month. I'm reading in the middle of that paragraph. $99,970.44 annually. So notwithstanding he made those comments that he might have felt they were inflated, his finding was that that's what they were and that's what he felt was appropriate for the statute to take into account. I believe my reading of it, Justice, is that he said that those are her numbers or those are her claimed expenses. And then he said, I think they're too high in any of it for the reasons that he gave. Either way, within the $5,000 a month, $116,000 a year is within the evidence. And certainly there shouldn't be the same amount, as counsel has asked for in her prayer, for the $9,700 a month to continue, notwithstanding the multiple changes of circumstances. Now, counsel argued that the trial court didn't take into account the lifestyle. I mean, you're arguing that the trial court did take into account the lifestyle, correct? Clearly, Justice, yes. All right. So taking into account the lifestyle, the trial judge, you know, apart from any comments the trial judge made, the trial judge set her expenses at $8,300 a month and an additional $20,000 per year. I mean, you argued earlier that she's not entitled to that $20,000, but according to her lifestyle during the marriage and according to the trial judge, she is. He said he believed that that would be the result of it, taking into account those other things that he felt were excessive, taking into account her income and her income capacity. But again, generally speaking, the rules on maintenance cases is we're not looking, we're not reviewing his reasoning, we're reviewing the result. Right. And ultimately, was the $5,000 a month an abuse of discretion? Well, one of the things that the trial judge did take into consideration was the fact that she was able to save over $300,000 during the time maintenance was being paid, correct? Right. Which she did. Well. And it was during the trial. Well, let me ask you that because after the first trial, Judge Bush seemed to indicate some, that he had, you talked earlier, alluded earlier to credibility issues, seemed to indicate that he had some problems with his credibility on that, okay? And then I think it was in the original case authored by this court, paragraph 30, we held there was insufficient evidence that she hid $300,000. Right. So if the trial judge early on is having some issue with his credibility on that, and we make a finding apparently that there's insufficient evidence that she hid $300,000, how does it pop up in this order now that she actually had the $300,000? It does not specifically find that she still had the $300,000. It indicated that she didn't really show what happened to it. It's really a red herring because it was her burden to show what happened to it. It wasn't Keith's job and it wasn't the trial court's job. The point is she had the money at one point and then she went through it. The trial court merely said there was no credible evidence of where it was or where it went. Now, with respect to his credibility, the issue was they put in, first of all, the documentation, and then he did a summary exhibit basically trying to show what he thought happened to it. And the judge said that he had been impeached on that and really wasn't going to consider that. So he didn't consider the summary, but he considered the evidence. There were statements that she had and then she didn't. And, again, this could be part of the spending analysis as well. Again, under maintenance, if there are expenses, if you choose to spend out of your assets, if you choose to travel, if you choose to do other things, that's fine, but that doesn't always mean that the husband has to continue to pay for it and he's paid for it for many years. This Court affirmed the initial maintenance award using the same standard of review. However, I stand on my brief unless the Court has any other questions. Under the extremely deferential standard of review, Keith respectfully. Yes. Do you agree with counsel's argument that the $60,000 is pre-tax income, that the trial court looked at $60,000 as a yearly income at the time, based primarily on Exhibit 9, and that was gross income? Yes. Any of the figures that were talked about, be it the $60,000, the $63,000, the $68,000, the experts' figures of the range up to $78,000 what she could earn, up to $96,000 elsewhere that she chooses to live in Ohio. All of those things and all the maintenance takes the taxes. Those are gross amounts. Of course, the expenses are net amounts. The $8,300 a month, which he calculated out to be $99.99 a year, and then he's factoring in the $60,000 gross now and says that she's required an additional almost $40,000 to meet her needs. But really, if you're looking at $60,000 gross, you would have to agree that she would need more than that to reach the $99.99. To reach the net number at today's tax levels, which I think 2018 went down to 24%, again, it's not your job to do those numbers or to crunch those numbers. But it is the trial court's job to crunch the numbers. And did the trial court correctly do that? I mean, the trial court made a finding that this $5,000 a month approximates the lifestyle. And the way he got to that number was by looking at these numbers. And my question to you is if you have a $99,000 expense income or expense amount per year, that's, of course, net. And then you look at a gross amount and then add $39,000 to it and say that's what you need. I mean, there's some faulty math there, is there not? But, again, you're assuming that those are all valid expenses. You're talking about the math. I understand that maintenance is taxable and that her income as well is taxable. And she declares a certain amount on her affidavits for that amount. I'm talking about the math because the trial court used the math to reach its result. I understand that, Justice. But as I also said, it's not the basis, it's not the reasoning that's on review. It's the amount. So we have to look at does this amount reasonably balance her income and her prospects for income, which this Court has previously said is not speculation, against a reasonable approximation of the standard of living during the marriage. And I submit that the trial court did. If there's nothing else. Thank you, Justice. Thank you. I appreciate it. All right. Ms. Musilam? As Your Honors previously pointed out, the credibility on the summary, Mr. Jury was impeached. And the trial court recognized that he was impeached but now is relying on it in the March of 2018 order. If Ms. Hardy had depleted savings, it would actually be further evidence of her need for maintenance. A party is not required to deplete their savings in order to enjoy the lifestyle that the parties enjoy during marriage. When you say he was impeached on that, to what degree? So they presented a summary the day of the trial. And Mr. Jury said it stated one thing. And the entries were inaccurate. And that was a summary that had this $330,000 that was depleted. No further evidence was presented after that by Mr. Jury. And Ms. Hardy didn't testify against it because the court had said on the record that he had been impeached on that summary. Even if Ms. Hardy was earning the $96,000 potential for the nationwide average, this court has already determined that she would still require maintenance to enjoy the lifestyle that the parties enjoy during the marriage. The trial court had a finding in March of 2015 that her income was $55,000. But by March of 2018, with no further testimony, no further evidence, that her income increased to $60,000 per year. At the end of the day, the trial court was to look at the evidence before it and determine the correct amount of maintenance for Ms. Hardy. However, it appears that the trial court was looking for the justification that the amount of the court selected. When you look at the various things that the court did, the court understated Mr. Jury's income and overstated Ms. Hardy's income. The court was looking at Ms. Hardy's financial affidavit, which was unrebutted and overly critical of her financial affidavit, while it didn't criticize Mr. Jury's financial affidavit, which was clearly understating his income. At the end of the day, we know that she cut down her lifestyle and the court did not acknowledge that, other than to say that she had a decreased lifestyle. The court failed to consider the tax consequences of the maintenance award. The trial court didn't even acknowledge that during the course of the time, over these last seven years, that Mr. Jury had actually amassed over a million dollars in assets since the entry of the judgment for dissolution of marriage. Well, how is that relevant? You yourself indicated when you argued earlier that that's relevant just to look at whether he's able to cover the amount of maintenance that's awarded, correct? Correct. And we're not trying to equalize incomes here? We are not. In fact, we're asking for the $9,700 per month, which is 30% of the $427,000, just to show that we were never asking for the equalization of income. Your Honors, we are just asking the court today to reverse the trial court and set an appropriate amount of maintenance, which our position is that it's $9,700 per month. Any questions? Thank you, Your Honors. Thank you, counsel, for your arguments today. The court will take the matter under advisement.